COORDINATED CARIBBEAN TRANSPORT, INC., Plaintiff,

v.

Drew LEWIS, et al., Defendants.

Civ. A. No. 81–1755.

United States District Court, District of Columbia.

Jan. 27, 1982.

Richard W. Kurrus, Paul G. Kirchner, Washington, D. C., for plaintiff.

Robert C. Seldon, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff Coordinated Caribbean Transport, Inc. ("CCT") seeks review of an order of the Maritime Subsidy Board rendered in connection with the applications of Delta Steamship Lines, Inc. ("Delta") for amendment of an existing operating-differential subsidy contract. The matter is before the Court on cross-motions and the extensive record of the proceedings before the Board. The Court finds that the Board's action on Delta's applications is not ripe for judicial review and the complaint must therefore be dismissed.

Delta recently acquired rights under an existing operating-differential subsidy contract for service between designated ports in the United States and the Caribbean. Delta filed two applications with the Board to amend the contract so that Delta could provide subsidized service on a "privileged call basis" to certain ports in the Caribbean and to obtain "interchange and transfer rights" between the services acquired under the contract.

Section 605(c) of the Merchant Marine Act of 1936, as amended, 46 U.S.C. § 1175(c) (1976), provides that no subsidy contract may be awarded unless the Secretary, in this instance acting through the Board, finds that service already provided by United States flag vessels is inadequate and that operation of additional United

States vessels in the contested trade routes would serve the purposes and policy of the Act. As required by the Act a hearing was held to determine whether this provision was a bar to Delta's applications and CCT fully participated in this hearing as permitted by regulation. *See* 46 CFR § 201.78 (1980). On June 4, 1981, the Board reversed the decision of the Administrative Law Judge and issued a Final Order and Opinion holding that section 605(c) does not bar these applications. That order has been upheld by the Secretary.

Before Delta's application can actually be granted, however, Delta must also demonstrate that it meets certain additional requirements, particularly those listed in section 601 of the Act, 46 U.S.C. § 1171 (1976).[1] No decision has yet been reached as to whether Delta meets these additional requirements. CCT has no right to participate in these further agency actions with the exception of a limited right to request the Secretary in his discretion to review the matter. *See* 46 CFR § 202 (1980).

The Secretary asks for judgment on the pleadings on the ground that CCT has not exhausted its administrative remedies and that the decision of the Board is not ripe for judicial review. CCT argues that this controversy is in a proper posture for judicial review and that the action of the Board should be reversed because it is unsupported by substantial evidence, arbitrary, capricious and an abuse of discretion, and otherwise not supported by law.

The issue of whether this case is ripe for judicial review is at least in part semantic. CCT, focusing on the Board proceedings with respect to the section 605(c) issues, points out that the Board's order as affirmed by the Secretary is final and that it has no further right to intervene in opposition to Delta's applications. On the other hand, the Secretary regards the Board's order as merely one step in a larger administrative proceeding. He argues that no final action appropriate for judicial review has occurred since the Board's determination will only have a concrete impact on CCT when and if Delta's application is approved. The Court finds that the Secretary's characterization of the administrative proceedings is more consistent with established ripeness doctrine.

▆▆▆ In determining whether a case is ripe for judicial review the Court must consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). For a case to be ripe for review "[w]hat is required is that the interests of the court and agency in postponing review until the question arises in some more concrete and final form, be outweighed by the interest of those who seek relief from the challenged action's 'immediate and practical' impact upon them." *Continental Air Lines, Inc. v. Civil Aeronautics Board*, 522 F.2d 107, 124–25 (D.C.Cir.1975) (*en banc*).

▆▆ The Board's determination that the requirements of section 605(c) are satisfied does not impose a significant hardship on CCT. While CCT is concerned that its ability to compete with Delta may be impaired

---

1. Section 601 provides that the Secretary shall not approve an operating-differential subsidy contract (or an amendment to such a contract), unless he determines that (1) the operation of such vessel or vessels in an essential service is required to meet foreign-flag competition and to promote the foreign commerce of the United States ...; (2) the applicant owns or leases, or can and will build or purchase or lease, a vessel or vessels of the size, type, speed, and number, and with the proper equipment required to enable him to operate in an essential service, in such manner as may be necessary to meet competitive conditions, and to promote foreign commerce; (3) the applicant possesses the ability, experience, financial resources, and other qualifications necessary to enable him to conduct the proposed operations of the vessel or vessels as to meet competitive conditions and promote foreign commerce; (4) the granting of the aid applied for is necessary to place the proposed operations of the vessel or vessels on a parity with those of foreign competitors.... 46 U.S.C. § 1171 (1976).

It is obvious that the determinations which the Board is required to make before Delta is eligible for an amendment of its contract are more than ministerial.

if the applications are granted, CCT obviously will not be exposed to this asserted hardship until a final decision is made to grant all or part of the application. CCT's only argument is that the Board's decision on the section 605(c) issues will affect CCT's future business decision-making and that in an industry as capital intensive as shipping this constitutes a significant hardship. However, the Court of Appeals for this Circuit has unequivocally rejected the argument that an individual is subject to a current hardship merely because the decision of an administrative agency creates uncertainty in capital planning. *See Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 673 & n.1 (D.C.Cir.1978). *See also Bethlehem Steel Corp. v. Environmental Protection Agency,* 536 F.2d 156, 162–63 (7th Cir. 1976).

It is against this lack of showing of any hardship that the Court must assess the interests of the Secretary and the Court in postponing review of the Board's decision. In attempting to strike the proper balance the Court notes that "in the absence of hardship only a minimum showing of countervailing judicial or administrative interest is needed, if any, to tip the balance against review." *Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 674 (D.C.Cir.1978).

Judicial review at this point in the administrative proceedings would be contrary to the mandate of *Abbott* "to protect the agencies from judicial interference until an administrative action has been formalized and its effect felt in a concrete way...." 387 U.S. at 148, 87 S.Ct. at 1515. If Delta's applications are ultimately rejected by the agency judicial oversight of the Board's resolution of the 605(c) issues will become unnecessary. In addition, a limited grant of Delta's application by the Secretary might narrow the issues for judicial determination should that become necessary.

The interest in preserving judicial resources would also be served if the Court now refrains from engaging in a potentially unnecessary review of the Board's order. Further agency action on Delta's application may obviate the need for judicial review entirely. Clearly, the Board's determination on the section 605(c) issues will not "inexorably" lead to the granting of Delta's application. *Cf. Regional Rail Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 356–357, 42 L.Ed.2d 320 (1974). Nor has the Board taken some type of action which will inevitably affect CCT adversely once its implications are worked out through specific administrative determinations. *Cf. Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 674 (D.C.Cir.1978). The Court's interest in avoiding premature and possibly unnecessary adjudication is of course strongest when it faces constitutional issues. *See* Joint *Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 150, 71 S.Ct. 624, 637, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). However, this interest is also entitled to weight when purely statutory issues are presented.[2]

Since the plaintiff is presently suffering no cognizable hardship as a result of the Board's order and since the interests of the Secretary and of this Court in postponing judicial review pending further agency action are significant, this action is not ripe for judicial review. In view of this ruling it is unnecessary to consider the other contentions raised by the parties. An appropriate order is filed herewith.

---

**2.** The Court notes that in *Sea-Land Service, Inc. v. Kreps,* 566 F.2d 763 (D.C.Cir.1977), involving a challenge to a section 605(c) determination, the complaint was not filed in the District Court until the Board had determined that the applicant was eligible for an operating-differential subsidy. The Court of Appeals did not, however, directly address the issue of ripeness.